**Lester R. ACKERMAN and Wife, Edna Del Ackerman,**

v.

**UNITED STATES of America.**

**Civ. No. 8960.**

United States District Court
N. D. Texas,
Dallas Division.

Feb. 4, 1963.

Wright Matthews and Robert K. Sands, Matthews, Payne, Sands & Benners, Dallas, Tex., for plaintiffs.

Barefoot Sanders, U. S. Atty., Joseph McElroy, Asst. U. S. Atty., Dallas, Tex., for government.

DAVIDSON, District Judge.

This case was brought by the complainant for the recovery of taxes allegedly paid to the government in excess of that which was legally and justly due. It grows out of a landed transaction in the State of Arizona.

The plaintiff Lester R. Ackerman has a brother in Phoenix, Arizona who is, according to the evidence, in the real estate business. The brother called the plaintiff's attention to a one-fourth interest in a tract of land that might be purchased. The plaintiff did not go to see the land, did not collaborate with the owners or purchasers of the other three-fourths interest. These matters were seemingly left entirely to his brother who lives in Phoenix.

Touching the various transactions pertaining to the sale and handling of this property, the plaintiff states in his complaint that about June 17, 1954 he purchased a one-fourth interest in the Sam Joy Ranch near Phoenix, Arizona, consisting of 4,280 acres of undeveloped land for which he paid a total consideration of $16,250.00.

Further, on October 7, 1955 the new owners of the Sam Joy Ranch, including the plaintiff Lester R. Ackerman, entered into an option agreement with the Desert Hills Development Company, a corporation, authorizing such company to purchase a portion or all of said land for $200.00 an acre.

Again on October 9, 1956 the parties entered into a second option similar to the first agreement except that the price was now increased from $200.00 per acre up to $400.00 an acre. At first $150.00 an acre had been considered.

On November 10, 1955 the plaintiff Lester R. Ackerman together with the other owners transferred the legal title to the Sam Joy Ranch to the Phoenix Title and Trust Company of Phoenix, Arizona to carry out the terms of the aforementioned option agreement.

The Desert Hills Corporation through its own brokers and agents sold approximately 3,150 acres of the Sam Joy Ranch under the terms of such option.

The plaintiff further states in his pleading that there was remitted to him from the sale of such property the following sums:

| Year | Profit |
|------|--------|
| 1956 | $17,283.26 |
| 1957 | $13,648.38 |
| 1958 | $12,572.33 |
| 1959 | $16,330.41 |

Plaintiff insists that he is entitled to have it treated subject to the capital gain statute.

The evidence does not disclose any express purpose or intention of buying the land except by inference.

After the purchase of the land, the Desert Hills Corporation was given an option to purchase a portion or all of said land. Steps were then taken to subdivide the land and to cut it into 10-acre blocks. The cost price of the land to the four owners was substantially $20.00 an acre. The Desert Hills Corporation had a sale price fixed by the four owners at $150.00 an acre and proceeded to have a portion of the land cut up and offered for sale.

Then without further moneyed transaction or apparent controversy a further agreement was made with the Desert Hills Corporation in which the price was raised from $150.00 to $200.00, then later from $200.00 to $400.00.

The Desert Hills Corporation, so far as the testimony goes, never paid any dividend, but it succeeded in a very successful manner to market the land at a price above $150.00. At various intervals a remittance was made to the principal representatives, representing his share. During the years of 1956, 1957, 1958 and 1959 large sums of money were paid over to the plaintiff as his portion of the sale price of such land.

Plaintiff Lester R. Ackerman made out his income tax report on the basis of capital gain instead of a straight income tax gain. The Commissioner disallowed the report of the profits as to capital gains and claimed that such profits are ordinary income rather than capital gains.

On August 16, 1961 the plaintiff filed claim for a refund of 1956 tax from the District Director of Internal Revenue at Dallas for the recovery of tax and interest illegally and erroneously collected in the amount of $5,686.26 with interest thereon.

On August 16, 1961 the plaintiff filed claim for the year 1957, the amount claimed for this year being $3,959.22, and for the year 1958 he further filed his claim in due order for $3,108.80, and for the year 1959 he filed his claim for $1,954.88, all of which claims are joined in this suit.

On August 16, 1961 the plaintiff Edna Del Ackerman filed claim for refund for the year of 1959 in the amount of $1,-993.24.

All of such claims were rejected by the Director of Internal Revenue so that the suit is for $16,702.38.

The testimony indicates that the surveyor, Gregg R. Irvine, as claimed by the defendant, originally stated that he started surveying at an earlier period than his further investigation sustained, making a difference of one year as to the date in which the land was blocked. However, nothing had transpired during the year to indicate any intention other than putting the property on sale and its being blocked and put on sale in piecemeal by blocks within itself established the property as tantamount of that of merchandise on the market and deprived it of the right of capital gains that it would have had had it been used in more permanent nature.

After the purchase of this land the purchasers, including the plaintiff Lester R. Ackerman, took no steps to revive the ranching business for which the land had seemingly been lately adapted, took no steps to divide it among each other, but proceeded to incorporate it and hired a surveyor to plat it in 10-acre blocks for the purpose of sale.

The Fifth Circuit in Smith v. Dunn, 224 F.2d 353, has held that the test in determining whether property is held for investment and subject to capital gain treatment or held primarily for sale to customers in the ordinary course of business can be determined from the reason, purpose and intent of the acquisition and duration of the ownership.

Our conclusion is that the land in view of the record was acquired by the complainant and his associates with the intent of blocking it and selling it at a profit in smaller parcels and that the rule of capital gain would not apply.